IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL WEATHER SERVICE            :
EMPLOYEES ORGANIZATION, et al.,     :
                                    :
            Plaintiffs,             :
                                    :
      v.                            :        Case No. 1:25-cv-02947-PLF
                                    :
DONALD J. TRUMP, et al.,            :
                                    :
            Defendants.             :

## DECLARATION OF DR. PATRICIA DUFFY

I, Patricia Duffy, declare under the penalty of perjury, pursuant to 28 U.S.C.

§ 1746, that the following is true and correct:

1.    I have been employed by the United States Patent and Trademark

Office (USPTO) as a patent examiner since 1994. I have a PhD in immunology from

the University of Texas Southwestern Medical Center at Dallas, Southwestern

Graduate School of Biomedical Sciences and I examine patent applications in the

field of bacterial immunology, such as for vaccines.

2.    The job of a patent examiner at the USPTO can be summarized as

follows:

- Review patent applications in our technical field of expertise to ensure it

  complies with legal and technical requirements and to understand the

  invention by reading the specification, claims, and drawings. Then conduct a

  prior art search of databases (patents, scientific literature, etc.) to find "prior

1

art" — existing technologies or publications similar to the invention in order to determine if the invention is novel and non-obvious in light of existing prior art.

- Decide whether the invention complies with requirements of U.S. patent laws by being a patent-eligible subject matter, new, non-obvious and clearly and completely described.

- Communicate with patent applicants by issuing "Office Actions", which explain rejections or objections and outline what must be corrected or amended, and respond to arguments or amendments submitted by the applicant or their attorney and sometimes participate in interviews with applicants or their representatives to discuss the application.

- Recommend or grant "allowance" of the application if all requirements are met or issue a final rejection if the applicant fails to overcome objections or rejections.

3.    I have been an officer, negotiator or member of the Executive Committee of the Patent Office Professional Association (POPA) since 1998. I became Vice President of POPA in 2019 and have been on "official time" (that is to say, released from my duties as a patent examiner to perform my work as a union representative and contract negotiator) full-time for the past several years.

4.    In May, 2025 POPA's President, Dr. Kathleen Duda, retired from Federal employment after decades of service at the USPTO and simultaneously

2

resigned as President of POPA. Upon her resignation, I succeeded to the position of President of POPA.

5.    In 1964, POPA was first recognized as the collective bargaining representative of all non-supervisory, non-managerial professional employees of the USPTO (other than those employed in Trademarks) pursuant to President Kennedy's January 17, 1962 Executive Order No. 10,988, *Employee-Management Cooperation in the Federal Sector.* Until Executive Order No. 14,343 was issued, POPA represented approximately 8,600 patent examiners employed under the Commissioner of Patents, as well as approximately 500 other professional employees employed under the Commissioner of Patents and in other offices of the USPTO, such as the Office of Chief Information Officer; the Office of Chief Financial Officer; the Office of Policy and International Affairs; and the Patent and Trademark Appeals Board.

6.    POPA and USPTO completed negotiations for a new, five-year collective bargaining agreement in late 2024. This agreement was executed and became effective on December 11, 2024. A copy of the agreement can be found here: http://popa.org/static/media/uploads/CBA/popa_agreement.pdf . The USPTO issued a press release praising this new agreement which read in part:

> "This landmark agreement —a generational
> accomplishment— represents the USPTO's commitment to
> strengthening the partnership between members of POPA and
> management," said Kathi Vidal, Under Secretary of Commerce for
> Intellectual Property and Director of the USPTO. "It supports our
> standards to create a space for thoughtful collaboration while also

3

preserving the many characteristics that make the USPTO such a unique and vibrant place to work for years to come."

https://www.uspto.gov/about-us/news-updates/uspto-patent-office-professional-association-sign-new-collective-bargaining.

7.    However, after a change in administrations in January 2025, the USPTO's leadership turned hostile to employees and POPA, and POPA took every effort to protect its contract and the working conditions of USPTO employees.

8.    In order to "increase production" (i.e., examine more patent applications) at the expense of the "quality" or legal validity of patents, on March 7, 2025 the USPTO suspended all non-essential training conducted on duty-time, including a bank of hours that examiners could use for continuing technical education. POPA grieved this violation of the POPA-USPTO collective bargaining agreement and when the grievance was denied, invoked arbitration. (See exhibit A attached hereto). The matter is presently pending before Federal labor arbitrator James Bilik.

9.    According to its Fiscal Year 2023 Annual Report on Telework, "the USPTO continues to be a leader of telework in the federal government. At the USPTO, telework is a business strategy that supports mission achievement and goal fulfillment," including $68 million annual savings in real estate costs. By the end of FY 2023, 96% of USPTO employees teleworked, and 86% teleworked full-time.

10.    On January 20, 2025 President Trump issued a "Return to In-Person Work" order to undermine rather than enhance the operations of Federal agencies.

4

Its goal was to coerce Federal employees to quit. In a Wall Street Journal editorial,

DOGE Directors Elon Musk and Vivek Ramaswamy wrote: "Requiring federal

employees to come to the office five days a week would result in a wave of voluntary

terminations that we welcome." *The DOGE Plan to Reform Government*, WALL

STREET JOURNAL, (Nov. 20, 2024) https://www.wsj.com/opinion/musk-and-

ramaswamy-the-doge-plan-to-reform-government-supreme-court-guidance-end-

executive-power-grab-fa51c020 (Last visited May 31, 2025).

11.    In order to implement this "Return to In-Person Work" order, the

USPTO began to cancel telework in phases. On April 14, 2025 the USPTO cancelled

telework for probationary patent examiners, 11% of whom promptly quit. POPA

grieved this violation of the POPA-USPTO collective bargaining agreement and

when the grievance was denied, invoked arbitration. (See exhibit B attached

hereto). The matter is presently pending before Federal labor arbitrator Spilker and

a hearing was scheduled for November 17 and 18, 2025.

12.    On May 19, 2025 the USPTO notified POPA that employees it

represented in the Office of Chief Financial Officer, Office of Chief Information

Officer, Office of General Counsel, Patent and Trademark Appeals Board, Office of

Policy and International Affairs and Office of Government Affairs who live within

50 miles of the USPTO headquarters could no longer routinely telework. POPA

grieved this violation of the POPA-USPTO collective bargaining agreement and

when the grievance was denied, invoked arbitration. See Exhibit C attached hereto.

5

The matter is presently pending before Federal labor arbitrator Torres and a hearing is scheduled for December 2 and 3, 2025.

13.   The USPTO routinely grants two-hours of excused absence from duty on the day before Federal holidays. The Telework Enhancement Act of 2010 provides that the head of each executive agency shall ensure that teleworkers and non-teleworkers are treated the same for purposes of work requirements or other acts involving managerial discretion. 5 U.S.C. § 6503(a). However, in order to pressure employees to abandon telework, beginning with the 2025 Memorial Day holiday the USPTO granted early dismissal to USPTO employees who worked on-site, but denied it to teleworkers. POPA grieved this violation of the Telework Enhancement Act and the POPA-USPTO collective bargaining agreement and when the grievance was denied, invoked arbitration. (See Exhibit D attached hereto). The matter is presently pending before Federal labor arbitrator Keith Greenberg and a hearing has not yet been scheduled.

14.   On June 3, 2025 the USPTO conducted a "Town Hall" with employees at which the Secretary of Commerce Lutnick spoke. Employees who were working at the USPTO headquarters (i.e., those who were not teleworking) were excused from work in order to attend. However, teleworkers were invited to attend virtually (as the Town Hall was streamed) but were not excused from work to do so and were required to attend on their own time. POPA grieved this violation of the Telework Enhancement Act and the POPA-USPTO collective bargaining agreement and the grievance was denied. (See Exhibit E attached hereto.)

6

15.    As noted, the USPTO routinely grants its employees early dismissal before Federal holidays. However, in a break with past practice and in an act of racial bias the USPTO failed to grant USPTO employees early dismissal before the 2025 Juneteenth holiday. POPA grieved this violation of past practice and when the grievance was denied, invoked arbitration. (See Exhibit F attached hereto). The matter is presently pending before Federal labor arbitrator Joshua Javits and a hearing has not yet been scheduled.

16.    The Federal Service Labor Management Relations Statute guarantees the right of Federal employee unions to participate in any "formal discussion" between management and employees "concerning any grievance or any personnel policy or practices or other general condition of employment." 5 U.S.C. § 7114(a)(2)(A). The USPTO has until now honored that obligation by allowing POPA's President or other representative to participate in recurring "Town Hall" meetings management has held with employees at which working conditions are routinely discussed. However, when the USPTO denied POPA's then President Kathleen Duda the opportunity to participate in a "Town Hall" meeting she held with thousands of employees on March 27, 2025 at which she discussed telework, the government-wide hiring freeze, overtime, the suspension of training, employee awards, and other "personnel polic[ies] or practices or other general condition of employment," POPA filed an unfair labor practice charge with the Office of General Counsel of the Federal Labor Relations Authority. (See Exhibit G attached hereto). The General Counsel's Regional Director's Office has informed POPA that it has

investigated the charge and has determined that there was a violation of the
Statute and that it intends to issue a formal unfair labor practice complaint against
the USPTO once a new FLRA General Counsel is nominated and confirmed.

17.    On August 28, 2025 the Acting Under Secretary of Commerce for
Intellectual Property who is also the Acting Director of the USPTO sent all USPTO
employees an email stating:

> The administration has determined that the Patents business unit and
> the Office of the Chief Information Officer (OCIO) business unit have
> "as a primary function . . . national security work," and that the federal
> labor statute cannot be applied to Patents and OCIO "in a manner
> consistent with national security requirements and consideration." As
> a result, employees in Patents and OCIO are no longer represented by
> unions (POPA and NTEU 243). These changes are effective
> immediately, and do not affect employees in other business units.

(See Exhibit H attached hereto).

18.    Also on August 28, 2025 I received a letter from the USPTO's Acting
Deputy Director of Human Resources informing me that "[t]he Agency will no
longer recognize POPA as the exclusive representative for any employees in Patents
and OCIO [Office of Chief Information Officer]."  The letter also stated that
"Patents and OCIO employees will no longer be entitled to 'official time,' described
in 5 U.S.C. § 7131 to carry out their representational duties since they are no longer
bargaining unit employees or covered by the CBA."  The letter also stated that
"[t]he Agency will discontinue its participation in grievance and arbitration
procedures arising under the Statute involving disputes brought on behalf of
employees in Patents and/or OCIO, including those matters currently pending
before a grievance official and/or arbitrator."  Further, the letter also stated that

8

"the Agency will terminate payroll deductions of union dues for employees in Patents and OCIO who are no longer in the bargaining unit as soon as practicable." (See Exhibit I attached hereto).

19.    Under POPA's 2024 collective bargaining agreement with the USPTO, POPA representatives are entitled to "official time" or release time from duties with pay, for bargaining, meetings and consultations with management, responding to management communications, investigation, preparation and presentation of grievances, and other representation matters authorized by the agreement and the Federal Service Labor Management Relations Statute. Since the August 28 executive order was issued, I and all other POPA officers and representatives have been prohibited from utilizing official time and are not performing patent examination or other agency work full-time, and can no longer fulfill our responsibilities to even continue to represent the employees in the POPA bargaining unit who are unaffected by the August 28 executive order and who retain collective bargaining rights.

20.    On September 9, 2025 USPTO counsel wrote Arbitrator Spilker and unilaterally cancelled the arbitration hearing scheduled for November 17 and 18 involving the grievance POPA filed over the termination of telework for probationary patent examiners. (See exhibit J attached hereto).

21.    During pay period 16, covering the period of August 9 through August 22, the USPTO (through its payroll administrator, the Department of Agriculture's National Finance Center) collected and remitted to POPA $21,215 in dues from

4,243 members of POPA who had elected dues allotment. No members paid dues directly to POPA as the automatic dues allotment authorized by the FSLMR Statute was the only mechanism that POPA utilized for collecting dues. Following the issuance of the Executive Order on August 28, 2025, in pay period 17 the USPTO withheld and remitted just $190 in dues from 38 members remaining in POPA's bargaining unit.

22.    The loss of recognition and bargaining rights for the nearly 9,000 patent examiners POPA has previously represented at this particular time is causing great injury to the patent examining corps because the USPTO is making significant changes in their working conditions to effectuate the new Administration's policies without providing POPA with an opportunity to bargain over the impact and implementation of those changes.

23.    For example, during the summer, POPA and USPTO management began preliminary discussions about possible changes to the patent examiners' Performance Appraisal Plan – which does more than just establish the procedures by which a patent examiner's work is to be annually appraised. The patent examiners' performance appraisal plan (or "PAP") establishes production quotas and allocates the amount of time in which an examiner is to process a patent application, which varies based on the complexity of technology and the examiners GS level. Whether an examiner will retain his or her job depends on whether he or she meets these production quotas, and examiners may earn significant financial bonuses by exceeding them by certain percentages. On October 2, 2025 USPTO

10

management notified the examining corps that it was unilaterally changing the PAP by, among other things, increasing the production quota, thereby reducing the amount of time examiners were allocated to act on each patent application to retain employment. (Independent studies have found that a substantial portion of the examiner corps already spend a significant amount of unpaid overtime meeting existing production quotas and that unrealistic quotas result in the grant of invalid patents). According to the notice sent to examiners, a copy of which is attached as exhibit K, these changes were ostensibly being made "to respond to increased focus on performance and accountability as detailed in the Office of Personnel Management's (OPM) memorandum on *Performance Management for Federal Employees.* POPA has traditionally been afforded the opportunity to bargain over the impact of changes to the patent examiners' PAP but USPTO terminated its discussions with POPA on these changes at an early stage as a result of the Executive Order.

24.    Similarly, USPTO is also making significant changes to awards programs for bargaining unit employees without bargaining over those changes with POPA. See exhibit L attached hereto.

25.    On October 1, 2025 the USPTO announced plans to close its satellite office in Denver, Colorado. https://www.uspto.gov/about-us/news-updates/uspto-announces-closure-rocky-mountain-regional-outreach-office The USPTO's press release falsely states that the number of employees at that office is less than ten. USPTO's internal directly lists 30 employees, some of whom are in POPA's FLRA

certified bargaining unit. POPA has not been provided an opportunity to bargain over the impact and implementation of this closure.

26.    The USPTO continues to recognize POPA as the collective bargaining representative of approximately 160 employees out of our original bargaining unit of over 9,000. They are employed in the Office of the Chief Financial Officer, the Office of Policy and International Affairs, at the Patent and Trademark Appeals Board, and in the Office of the Director of the USPTO.

PATRICIA DUFFY

Executed on October 23 , 2025 in Alexandria, Virginia.

12

# EXHIBIT A

**From:** **Duda, Kathleen** Kathleen.Duda@USPTO.GOV
**Subject:** FW: POPA Association Grievance
**Date:** March 31, 2025 at 9:45 AM
**To:** richard@hirnlaw.com



---

**From:** Kiknadze, Irakli <Irakli.Kiknadze@USPTO.GOV>
**Sent:** Thursday, March 20, 2025 3:24 PM
**To:** LRGrievance <LRGrievance@USPTO.GOV>
**Cc:** Duda, Kathleen <Kathleen.Duda@USPTO.GOV>; Duffy, Patricia (AU1645)
<Patricia.Duffy@USPTO.GOV>
**Subject:** POPA Association Grievance

Dear Senior Labor Advisor Benjamin K. Ahlstrom,

Please accept this email as a formal notice of invocation of
the negotiated Association grievance procedure (docket#
2025-POPA-0320) regarding March 7, 2025 unilateral and
indefinite suspension of non-essential training involving
training on duty time. The grievance has been directed to
you in accordance with the Collective Bargaining
Agreement pursuant to Article 13, Section 6. In the event
that you do not have the authority to resolve the matter,
please promptly refer the grievance to the official who does
have such authority and notify me.

The suspension of non-essential training violates Article 42,
Section 4, in which the Agency promises to continue certain
training programs subject to "funding constraints." This
provision does not authorize the Agency to suspend the
enumerated training programs (such as the training bank)
"to focus available examining resources on driving down
the inventory of unexamined patent applications." The
"inventory" of unexamined applications at the time Article
42 was negotiated was comparable to what it is now.
Further, the suspension of the Training Bank also violates
Article 42, Section 3, "Outside Conferences, Seminars,
Meetings and Classes."

To the extent that Article 42 provides the Agency with
latitude to suspend or curtail training, the Agency was still

obligated to provide the Association with notice and an opportunity to bargain over this change in conditions of employment. The Agency's failure to provide this bargaining opportunity prior to implementing this change constitutes an unfair labor practice in violation of the Federal Service Labor Management Relations Statute, 5 U.S.C. Section 7116(a)(1) and (5). "A termination of a training program similarly mandates that management notify the Union, and that the latter be given an opportunity to bargain regarding the procedures to be observed in its implementation." *U.S. Gov't Printing Off.,* 17 F.L.R.A. 254, 275n. 15 (1985); *accord, Internal Rev. Serv., (District, Region and National Office Unit and Service Center Unit*), 18 F.L.R.A. 326 (1982). Furthermore, this unilateral suspension of non-essential training violates the Agency's contractual obligation to bargain in good faith prior to implementing a change in conditions of employment found in Article 16, Sections 2(b) and 3.

As a remedy, we request the immediate retraction of the so-called "Updated Employee Training Plan Guidance," and a restoration of the status quo ante. Employees who were denied the opportunity to engage in training during the pendency of the grievance should be promptly given the opportunity to "make-up" the lost training opportunity and all examiners should be notified of that opportunity. Further, employees shall be made whole for any consequential losses that resulted from the delay or denial of training, such as a delayed promotion. Employees who would have been given the opportunity to engage in training on duty time but did so on their own time as a result of the March 7 directive shall be granted overtime or, at the employee's option, compensatory time off.

Sincerely,
Irakli Kiknadze

Director of Grievances
POPA
571-272-6494

# EXHIBIT B



Box 25287, Alexandria, VA  22313

April 24, 2025

Ms. Sonya Penn
Acting Director of Labor Relations
Office of Human Resources
Mail Stop 13
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

*by electronic mail:*  lrgrievance@uspto.gov

Re: *Grievance Docket No. 04-24-2025-POPA-02*

Dear Ms. Penn:

This is an Association grievance filed pursuant to Article 13, Section 6 of the
parties' 2024 collective bargaining agreement over the April 14, 2025 "Notice for
Return to Office of Probationary Patent Examiners."

A.     In this notice from the Acting Chief Administrative Officer, POPA was
informed that *all* "probationary Patent Examiners . . . who live within 50 miles will
be directed to report to the USPTO headquarters . . . for one-year."  This directive is
a flagrant breach of the "Telework Agreement for Patent Employees Hired to Work
Remotely from a USPTO Office" of November 8, 2022, in which it was agreed that
probationary patent examiners could participate in both the Patents Fulltime
Telework Program or Patents Partial Telework Program. It is also a violation of
both of the earlier agreements that established those programs.

The "Patents Partial Telework Program 2022 Agreement" of February 7,
2022, permits probationary employees to telework up to 40 hours a pay period.
Furthermore, because the April 14 notice terminates telework eligibility for a period
of one year, it will prohibit patent examiners who complete their probationary
period from teleworking until one year after their return to campus. Thus, this
Notice also violates the February 7, 2022 "Patents Full-Time Telework Program"
that contains three telework options for which all examiners who have completed

their probationary program are eligible (although, as noted above, the November 8, 2022 agreement opened these programs to probationary employees who have completed their initial PTA training).

The parties agreed in their December 11, 2024 "Side Agreement to Retain Memorandums of Understanding" to retain these three agreements in effect until the expiration of the new master collective bargaining agreement on June 30, 2029.

Although the parties agreed in a February 8, 2025 Memorandum of Understanding that patent examiners hired during the during the government-wide hiring freeze will work on-campus for the duration of their probationary period, there was no agreed-upon change to the status and eligibility of telework for those probationary employees hired before that date.

**B.**    In the third paragraph of the April 14 "Notice" the agency has claimed that the telework agreements between POPA and the USPTO "are unlawful and cannot be enforced." This constitutes a repudiation of those agreements which is an unfair labor practice in violation of the Federal Service Labor Management Relations Statute, 5 U.S.C. § 7116(a)(1) and (5).

To the extent that this April 14 notice is intended to enforce President Trump's January 20, 2025 *Return to Work* order it also violates § 7116(a)(7) which makes it an unfair labor practice "to enforce any rule or regulation . . . which is in conflict with any applicable collective bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed."

**C.**    The termination of telework eligibility for probationary examiners also violates the following statutes that require the USPTO to permit telework "to the maximum extent possible" –

**1.    Department of Transportation and Related Agencies Appropriations Act 2001, Pub. L. No. 106- 346, 114 Stat. 1356A-36:**

SEC. 359. Each executive agency shall establish a policy under which eligible employees of the agency may participate in telecommuting to the maximum extent possible without diminished employee performance. Not later than 6 months after the date of the enactment of this Act, the Director of the Office of Personnel Management shall provide that the requirements of this section are applied to 25 percent of the Federal workforce, and to an additional 25 percent of such workforce each year thereafter.

2.    **Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act, 2004, Pub. L. No. 108-199, 111 Stat. 99:**

SEC. 627. The Departments of Commerce, Justice, State, the Judiciary, and the Small Business Administration shall each establish a policy under which eligible employees may participate in telecommuting to the maximum extent possible without diminished employee performance: *Provided*, That, not later than 6 months after the date of the enactment of this Act, each of the aforementioned entities shall provide that the requirements of this section are applied to 100 percent of the workforce: *Provided further*, That, of the funds appropriated in this Act for the Departments of Commerce, Justice, and State, the Judiciary, and the Small Business Administration, $200,000 shall be available to each Department or agency only to implement telecommuting programs: *Provided further*, That, every 6 months, each Department or agency shall provide a report to the Committees on Appropriations on the status of telecommuting programs, including the number of Federal employees eligible for, and participating in, such programs, and uses of funds designated under this section: *Provided further*, That each Department or agency shall designate a "Telework Coordinator" to be responsible for overseeing the implementation of telecommuting programs and serve as a point of contact on such pro- grams for the Committees on Appropriations.

3.    **Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act, 2005, Pub. L. No. PL 108-447, 118 Stat. 2919:**

SEC. 622. The Departments of Commerce, Justice, State, the Judiciary, the Securities and Exchange Commission and the Small Business Administration shall, not later than two months after the date of the enactment of this Act, certify that telecommuting opportunities are made available to 100 percent of the eligible workforce: *Provided,* That, of the total amounts appropriated to the Departments of Commerce, Justice, State, the Judiciary, the Securities and Exchange Commission and the Small Business Administration, $5,000,000 shall be available only upon such certification: *Provided further,* That each Department or agency shall provide quarterly reports to the Committees on Appropriations on the status of telecommuting programs, including the number of Federal employees eligible for, and participating in, such programs: *Provided further,* That each Department or agency shall designate a "Telework Coordinator" to be responsible for overseeing the implementation and operations of telecommuting programs, and serve as a point of contact on such programs for the Committees on Appropriations.

4.    **Science, State, Justice, Commerce and Related Agencies Appropriations Act, 2006, PL 109—108, 119 Stat. 2340-2341:**

SEC. 617. The Departments of Commerce, Justice, and State, the Securities and Exchange Commission and the Small Business Administration shall, not later than two months after the date of the enactment of this Act, certify that telecommuting opportunities have increased over levels certified to the Committees on Appropriations for fiscal year 2005: *Provided*, That, of the total amounts appropriated to the Departments of Commerce, Justice, and State, the Securities and Exchange Commission and the Small Business Administration, $5,000,000 shall be available to each only upon such certification: *Provided further*, That each Department or agency shall provide quarterly reports to the Committees on Appropriations on the status of telecommuting programs, including the number and percentage of Federal employees eligible for, and participating in, such programs: *Provided further*, That each Department or agency shall maintain a "Telework Coordinator" to be responsible for overseeing the implementation and operations of telecommuting programs, and serve as a point of contact on such programs for the Committees on Appropriations.

5.    **Telework Enhancement Act of 2010, Pub. L. No. 111-192, 124 Stat. 3165, Title 5 U.S.C. § 6501 et seq.:**

"[T]he head of each executive agency shall . . . establish a policy under which eligible employees of the agency may be authorized to telework. . . and . . . notify all employees of the agency of their eligibility to telework."

As relief, we demand that the notice of April 14, 2025 be rescinded and that the USPTO continue to comply with the terms of all of the parties' telework agreements. I will serve as the Association's representative in this matter.

Sincerely yours,

*Irakli Kiknadze*

Irakli Kiknadze
Director of Grievances
ikiknadze@popa.org

# EXHIBIT C



Box 25287, Alexandria, VA  22313

May 29, 2025

Ms. Sonya Penn
Acting Director of Labor Relations
Office of Human Resources
Mail Stop 13
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

*by electronic mail:* lrgrievance@uspto.gov

Re: *Grievance Docket No. 05-29-2025-POPA-03*

Dear Ms. Penn:

This is an Association grievance filed pursuant to Article 13, Section 6 of the parties' 2024 collective bargaining agreement over the May 19, 2025 "Notice of Change to Telework Eligible Positions."

## 1.     Contractual violations:

**a.**     The wholesale termination of routine and remote telework contained in the May 19, 2025 Notice is a violation of the five Memoranda of Understanding establishing telework programs in the Office of Chief Financial Officer and Office of Chief Information Officer (March 3, 2022); Office of General Counsel (March 25, 2022); Patent and Trademark Appeals Board (March 24, 2022); Office of Policy and International Affairs (October 25, 2022) and Office of Government Affairs (January 17, 24). The language in those agreements authorizing annual review of the eligibility of positions and number of days employees encumbering particular positions does not authorize cancellation of the entirety of the telework program because the wholesale removal of all positions from routine and remote telework is inconsistent with the criteria in those agreements for "position eligibility" which require an individual assessment of each position. Further, to allow this language to vesicate the entire routine and remote telework program in each of these offices would violate the cardinal principle of construction that the exemption cannot

swallow the rule. *Sinclair Wyoming Ref. Co. LLC v. Env't Prot. Agency*, 114 F.4th 693, 711 (D.C. Cir. 2024); *accord, Cuomo v. Clearing House Assn.,* 557 U.S. 519, 530 (2009); *Pac. Gas & Elec. Co. v FERC*, 113 F.4th 943, 949 (D.C. Cir. 2024).

 **b.**  Furthermore, the termination of telework for employees participating in the Telework Enhancement Act Program (TEAP) violates the March 23, 2022 Memorandum establishing the TEAP. Under that agreement (as well as 5 U.S.C. § 5711(f)(4)) the terms of TEAP may only be changed by the joint labor-management Oversight Committee.

**2.** **Unfair Labor Practices:**

 **a.**  At the end of the fourth paragraph of the May 19 "Notice" the agency has claimed that the telework agreements between POPA and the USPTO "are unlawful and cannot be enforced." This constitutes a repudiation of those agreements which is an unfair labor practice in violation of the Federal Service Labor Management Relations Statute, 5 U.S.C. § 7116(a)(1) and (5).

 **b.**  The May 19 notice's reliance on President Trump's *Return to In-Person Work* Memorandum of January 20, 2025 also violates § 7116(a)(7) which makes it an unfair labor practice "to enforce any rule or regulation . . . which is in conflict with any applicable collective bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed."

 **c.**  Furthermore, even assuming that the termination of routine and remote telework is consistent with the parties' MOUs and the law, the agency's announced intent in the last paragraph to terminate routine and remote telework before impact bargaining is complete is a violation of the agency's statutory duty to bargain in good faith which also constitutes an unfair practice in violation of § 7116(a)(5), as well as a violation of Article 16, section 9 because there is no overriding exigency.

**3.** **Other statutory violations:**

 The termination of routine and remote telework also violates the following statutes that require the USPTO to permit telework "to the maximum extent possible:"

 **a.**  **Department of Transportation and Related Agencies Appropriations Act 2001, Pub. L. No. 106- 346, 114 Stat. 1356A-36:**

  SEC. 359. Each executive agency shall establish a policy under which eligible employees of the agency may participate in telecommuting to the maximum extent possible without diminished employee performance. Not

later than 6 months after the date of the enactment of this Act, the Director of the Office of Personnel Management shall provide that the requirements of this section are applied to 25 percent of the Federal workforce, and to an additional 25 percent of such workforce each year thereafter.

**b.      Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act, 2004, Pub. L. No. 108-199, 111 Stat. 99:**

SEC. 627. The Departments of Commerce, Justice, State, the Judiciary, and the Small Business Administration shall each establish a policy under which eligible employees may participate in telecommuting to the maximum extent possible without diminished employee performance: *Provided*, That, not later than 6 months after the date of the enactment of this Act, each of the aforementioned entities shall provide that the requirements of this section are applied to 100 percent of the workforce:

**c.      Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act, 2005, Pub. L. No. PL 108-447, 118 Stat. 2919:**

SEC. 622. The Departments of Commerce, Justice, State, the Judiciary, the Securities and Exchange Commission and the Small Business Administration shall, not later than two months after the date of the enactment of this Act, certify that telecommuting opportunities are made available to 100 percent of the eligible workforce:

**d.      Science, State, Justice, Commerce and Related Agencies Appropriations Act, 2006, PL 109—108, 119 Stat. 2340-2341:**

SEC. 617. The Departments of Commerce, Justice, and State, the Securities and Exchange Commission and the Small Business Administration shall, not later than two months after the date of the enactment of this Act, certify that telecommuting opportunities have increased over levels certified to the Committees on Appropriations for fiscal year 2005:

**e.      Telework Enhancement Act of 2010, Pub. L. No. 111-192, 124 Stat. 3165, Title 5 U.S.C. § 6501 et seq.:**

"[T]he head of each executive agency shall . . . establish a policy under which eligible employees of the agency may be authorized to telework. . . and . . . notify all employees of the agency of their eligibility to telework."

> f.    National Defense Authorization Act for FY 2021, Pub. L. No. 116-283, 134 Stat. 3893, Title 5 U.S.C. § 5711(f):

"The Patent and Trademark Office *shall* conduct a program under this section." (emphasis added).

"The Oversight Committee shall develop and maintain the operating procedures for the program under this subsection to . . . ensure that . . . the program is applied consistently and equitably throughout the Patent and Trademark Office and an optimal operating standard is developed and implemented for maximizing the use of the telework arrangement described under paragraph (2) while minimizing agency travel expenses and employee travel requirements."

As relief, we demand that the notice of May 19, 2025 be rescinded and that the USPTO continue to comply with the terms of all of the parties' telework agreements. I will serve as the Association's representative in this matter.

Sincerely yours,

*Irakli Kiknadze*

May 29, 2025
Irakli Kiknadze
Director of
Grievances
ikiknadze@popa.org

# EXHIBIT D



Box 25287, Alexandria, VA 22313

July 8, 2025

Ms. Sonya Penn
Acting Director of Labor Relations
Office of Human Resources
Mail Stop 13
United States Patent and Trademark Office P.O. Box 1450
Alexandria, VA 22313-1450
by electronic mail:  lrgrievance@uspto.gov

Re: Grievance Docket No. 07-08-2025-POPA-04

Dear Ms. Penn:

This is an Association grievance filed pursuant to Article 13, § 6 of the parties' 2024 collective bargaining agreement over the failure to grant all unit employees early dismissal for the Memorial Day holiday on May 23, 2025, and for the Independence Day holiday on July 3, 2025.

### 1. Contractual violations:

According to information provided to us by the Agency, 156 of 212 unit employees who were working on campus on May 23 were granted the customary two hours of administrative leave, while only 43 of 6,788 unit employees who were reported to be teleworking that day were granted early dismissal. On July 2, the Acting Commissioner of Patents sent employees an email explicitly stating that only those assigned to and report in-person to a USPTO office would be granted early dismissal on July 3.

1.      The failure to grant all unit employees early dismissal before the Memorial Day and Independence Day holidays violates a past practice that has been in effect for at least ten years.

2.      The failure to grant all unit employees early dismissal before the Memorial Day and Independence Day holidays as it has been done for at least the past ten years was a unilateral change in conditions of employment that:

    **a.**     constitutes an unfair labor practice in violation of § 7116(a)(1) and (5) of the Federal Service Labor Management Relations Statute; and

    **b.**     a violation of Article 16, §§ 2, 3, and 8,

because management failed to provide the Union with notice and an opportunity to engage in pre-decisional discussions and impact and implementation bargaining before making the change.

    **3.**     The granting of early dismissal to some, but not all bargaining unit employees violates Article 5, § 5 of the collective bargaining agreement which provides that "[e]mployees will be treated equitably and fairly by management." See *Social Sec. Admin., Baltimore, Maryland*, 58 F.L.R.A. 630, 631 & n. 2 (2003) (denying exceptions to award of arbitrator who found that granting administrative leave to some, but not all unit employees before Christmas holiday violated contract provision that provides that "all employees shall be treated fairly and equitably in all aspects of personnel management.")

    **4.**     While the overwhelming number of bargaining unit employees who were working on campus on May 23 were granted early dismissal, less than 1% of teleworking bargaining unit employees were granted early dismissal. Only those employees who were working at a USPTO Office on July 3 were granted early dismissal. This constitutes a violation of:

    **a.**     Section III.H.1.e of the February 7, 2022 "Patents Full-Time Telework Program" agreement and Section III.E.1.d of the February 7, 2022 "Patents Partial Telework Program" agreement, which provide:

> Administrative leave for early/immediate dismissal not due to emergency or weather conditions, such as dismissals prior to a Federal holiday, will be granted to participants working at the approved alternate worksite.

    **b.**     the Telework Enhancement Act of 2010, Pub. L. No. 111-292, which provides that:

> the head of each executive agency shall ensure that –
>
>          \*   \*   \*
>
> (3) teleworkers and nonteleworkers are treated the same for purposes of—
>
>          \*   \*   \*

(C) work requirements; or

(D) other acts involving managerial discretion;

5 U.S.C. § 6503(a).

5. On information and belief, early dismissal was uniformly granted to employees of the USPTO who were not bargaining unit employees. This discriminates and interferes with employees' right to unionize and constitutes an unfair labor practice in violation of § 7116(a)(1) and (2) of the Federal Service Labor Management Relations Statute. There is no rational basis to grant supervisors early dismissal but not their subordinates.

As relief, we demand that every full-time unit employee who was on duty for at least four (4) hours, who was not granted early dismissal on May 23, 2025 and/or July 3, 2025 be granted two hours of administrative leave for each day to be taken at a time approved by their supervisor. We further demand that every part-time unit employee who was on duty and scheduled to work five (5) or more hours be granted one (1) hour of administrative leave for each day to be taken at a time approved by their supervisor, and that every part-time unit employee who was on duty and scheduled to work six (6) or more hours be granted two (2) hours of administrative leave for each day to be taken at a time approved by their supervisor. In addition, we demand that the USPTO restore its past practice of granting early dismissal before each Federal holiday, including the upcoming Labor Day holiday, and that any unit employee who is not granted early dismissal before the Labor Day holiday and any ensuing holiday until this grievance is resolved be granted the number of hours of administrative leave customarily and historically granted to unit employees before said holiday, to be taken at a time approved by their supervisor. And, because OPM regulations include "leave" as an element of back pay within the meaning of the Back Pay Act, 5 C.F.R. part 550.803, the Union also demands its attorney fees incurred in the presentation and prosecution of the grievance.

Sincerely yours,

*Irakli Kiknadze*

July 8, 2025
Irakli Kiknadze
Director of Grievances
ikiknadze@popa.org

# EXHIBIT E



Box 25287, Alexandria, VA  22313

**DATE:**      **July 15, 2025**

**TO:**        **Sonya Penn,**
              **Acting Director of Labor Relations**
              **Office of Human Resources, USPTO**

              *By electronic email:* **lrgrievance@uspto.gov**

**FROM:**      **Irakli Kiknadze**
              **Grievance Director,**
              **Patent Office Professional Association**

**RE:**        **THE FAILURE TO GRANT ALL EMPLOYESS "OTHER TIME" FOR IN-PERSON OR VIRTUAL ATTENDANCE SECRETARY LUTNICK'S TOWNHALL ON JUNE 3, 2025.** Grievance Docket No. 07-15-2025-POPA-06

      This is an Association grievance filed pursuant to Article 13, § 6 of the parties' 2024 collective bargaining agreement over the failure to grant all unit employees "other time" for in-person or virtual attendance Secretary Lutnick's townhall on June 3, 2025.

      According to information provided to us by the Agency, those bargaining unit employees who were working on campus on June 3, 2025 and attended were granted the customary "other time", while virtually all of those who were teleworking were not offered "other time."  On June 2, the USPTO sent a PTOWeb Extra indicating that Acting Director of the USPTO, Coke Stewart would host an employee townhall with the Secretary of Commerce explicitly stating that only those who attended in-person would be granted "other time."

*Professional Representation for Patent Professionals*

1.      The failure to grant all unit employees who attended the townhall one (1) hour of "other time" violates a long standing past practice of granting "other time" to attend agency-wide or business unit specific townhalls.

2.      The failure to grant all unit employees (1) hour of "other time" for virtual or in-person attendance at townhalls as it has been done for at least the past ten years was a unilateral change in conditions of employment that:

a.      constitutes an unfair labor practice in violation of § 7116(a)(1) and (5) of the Federal Service Labor Management Relations Statute; and

b.      a violation of Article 16, §§ 2, 3, and 8,

because management failed to provide the Association with notice and an opportunity to engage in pre-decisional discussions and impact and implementation bargaining before making the change.

3.      The granting of "other time" to some, but not all bargaining unit employees violates Article 5, § 5 of the collective bargaining agreement which provides that "[e]mployees will be treated equitably and fairly by management."  See *Social Sec. Admin., Baltimore, Maryland*, 58 F.L.R.A. 630, 631 & n. 2 (2003) (denying exceptions to award of arbitrator who found that granting administrative leave to some, but not all unit employees before Christmas holiday violated contract provision that provides that "all employees shall be treated fairly and equitably in all aspects of personnel management.")

4.      While a substantial number of bargaining unit employees who were working on campus on June 3, 2025 were granted "other time" to attend the townhall meeting in-person, less than 1% of teleworking bargaining unit employees were granted "other time" for virtual attendance. Only those bargaining unit employees who were working at the USPTO Headquarters in Alexandria and were attending in-person on June 3 were granted "other time".

This constitutes a violation of:

The Telework Enhancement Act of 2010, Pub. L. No. 111-292, which provides that:

the head of each executive agency shall ensure that –

* * *

(3) teleworkers and non-teleworkers are treated the same for purposes of—

* * *

(C) work requirements; or

(D) other acts involving managerial discretion;

5 U.S.C. § 6503(a).

**5.**    There is no rational basis and it was arbitrary and capricious to grant in-person bargaining unit attendees "other time" but not provide the same for bargaining unit virtual attendees.

As relief, we demand that every unit employee who attended the townhall virtually, who was not granted one (1) hour of "other time", be granted one (1) hour of "other time" where in-person bargaining unit employees received "other time" compensation. In addition, we demand that the USPTO restore its past practice of granting "other time" for virtual bargaining unit attendees at townhalls and for any ensuing townhall that includes unit employees, until this grievance is resolved, that they be granted the number of hours of "other time" customarily and historically granted to in-person employees.

Sincerely,
Irakli Kiknadze

*Irakli Kiknadze*

Director of Grievances POPA
571-272-649

# EXHIBIT F



Box 25287, Alexandria, VA 22313

July 9, 2025

Ms. Sonya Penn
Acting Director of Labor Relations
Office of Human Resources
Mail Stop 13
U. S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
by electronic mail: lrgrievance@uspto.gov

Re: Grievance Docket No. 07-09-2025-POPA-05

Dear Ms. Penn:

This is an Association grievance filed pursuant to Article 13, § 6 of the parties' 2024 collective bargaining agreement over the failure to grant unit employees early dismissal for the Juneteenth holiday (officially "Juneteenth National Independence Day") on June 18, 2025.

    **1.**    The failure to grant unit employees early dismissal before the Juneteenth holiday violates a past practice that has been in effect since 2022.

    **2.**    The failure to grant unit employees early dismissal before the Juneteenth holiday the past three years was a unilateral change in conditions of employment that:

        **a.**    constitutes an unfair labor practice in violation of § 7116(a)(1) and (5) of the Federal Service Labor Management Relations Statute; and

        **b.**    a violation of Article 16, §§ 2, 3, and 8,

because management failed to provide the Union with notice and an opportunity to engage in pre-decisional discussions and impact and implementation bargaining before making the change.

    **3.**    The failure to grant unit employees early dismissal before the Juneteenth holiday as it does before other Federal holidays is racist and violates the Fourteenth Amendment.

    As relief, we demand that every full-time unit employee who was on duty for at least four (4) hours and who was not granted early dismissal on June 18, 2025 be granted two hours of administrative leave for each day to be taken at a time approved by their supervisor. We further demand that every part-time unit employee who was on duty and scheduled to work five (5) or more hours be granted one hour of administrative leave to be taken at a time approved by their supervisor, and that every part-time unit employee who was on duty and scheduled to work six (6) or more hours be granted two hours of administrative leave to be taken at a time approved by their supervisor. In addition, we demand that the USPTO restore its past practice of granting early dismissal before each Federal holiday, and that any unit employee who is not granted early dismissal before any ensuing holiday until this grievance is resolved be granted the number of hours of administrative leave customarily and historically granted to unit employees before said holiday, to be taken at a time approved by their supervisor. And, because OPM regulations include "leave" as an element of back pay within the meaning of the Back Pay Act, 5 C.F.R. part 550.803, the Union also demands its attorney fees incurred in the presentation and prosecution of the grievance.

    Sincerely yours,

*Irakli Kiknadze*

Irakli Kiknadze
Director of Grievances
ikiknadze@popa.org

# EXHIBIT
# G



# Charge Against an Agency

## eFiling No. eOGC021913

Revision: REV-11-18-2018

**Case No. WA-CA-25-0208**
**Date Filed:  04/02/2025**

## Filing Party

**Filing Representative Email Address**
richard@hirnlaw.com

| | |
|---|---|
| **First Name** | **Last Name** |
| Richard | Hirn |
| **Street Address** | **Street Address 2** |
| 5335 Wisconsin Ave NW | Suite 440 |
| **City** | **State** |
| Washington | DC |
| **ZIP Code** | |
| 20015 | |
| **Title** | **Organization** |
| Richard J. Hirn | Attorney at Law |
| **Phone** | |
| (202) 274-1812 | |

## Agency Against Which Charge is Brought

**Search or write-in Charged Party information?**
Search

**Name of Charged Agency**
PATENT AND TRADEMARK OFFICE

| **City** | **State** |
|---|---|
| Alexandria | VA |

## Agency Representative Information

**Email Address**

valencia.martinwallace@uspto.gov

| **First Name** | **Last Name** | **Title** |
|---|---|---|
| Valencia | Wallace | Acting Commissioner for Patents |

| **Street Address** | | **Street Address 2** |
|---|---|---|
| PO Box 1450 | | Empty |

| **City** | **State** | **ZIP Code** |
|---|---|---|
| Alexandria | VA | 22313-1450 |

| **Phone** | **Fax** |
|---|---|
| 571-272-8800 | Empty |

# Charging Party Information

**Search or write-in Charging Party information?**

Search

> **Name of Charged Agency**
>
> PATENT OFFICE PROFESSIONAL ASSOCIATION

# Charging Party Representative Information

**Email Address**

richard@hirnlaw.com

| **First Name** | **Last Name** | **Title** |
|---|---|---|
| Richard | Hirn | Richard J. Hirn |

| **Street Address** | | **Street Address 2** |
|---|---|---|
| 5335 Wisconsin Ave NW | | Suite 440 |

| **City** | **State** | **ZIP Code** |
|---|---|---|
| Washington | DC | 20015 |

| **Phone** | **Fax** |
|---|---|
| (202) 274-1812 | (202) 686-2877 |

# Basis of the Charge

**OGC Regional Office**

OGC-WA - Washington Regional Office

**Set forth a clear and concise statement of the facts constituting the alleged unfair labor practice, including date and location of the particular acts:**

The Respondent violated section 7114(a)(2)(A) of the Statute by denying the exclusive representative an opportunity to comment, speak and make statements during a formal discussion of personnel

policies, practices and general conditions of employment with bargaining unit employees during an "All Patents Employee Meeting" conducted on March 27, 2025.

## Attachments

Please attach any available supporting documents.

**Identify which one or more of the following subsections of 5 U.S.C. § 7116(a) has or have allegedly been violated. Please note that a violation of (2) through (8) is an automatic violation of (1). For the purpose of this chapter, it shall be an unfair labor practice for an agency:**

☐

☑ (8) to otherwise fail or refuse to comply with any provision of this chapter.

**Have you or anyone else raised this matter in any other procedure?**
No

## Declaration

☑ **I declare that I have read this charge and that the statements in it are true to the best of my knowledge and belief. I understand that making willfully false statements can be punished by fine and imprisonment, 18 U.S.C. 1001.**
**Your Name (this will act as your signature)          Date (MM/DD/YYYY)**
Richard J. Hirn                                        04/02/2025

You are required to serve your charge on the Charged Party in accordance with 5 C.F.R. § 2423.6(d). **The filing of a document using the FLRA's eFiling System does _not_ constitute service of the document on any party. The filing party must independently accomplish service by one of the following methods.**

This charge was served on the Charged Party Representative identified above by the following method(s):
**Serving Method(s)**
☑ First-class mail

# EXHIBIT H



**From:** Pat Duffy  pduffy@popa.org
**Subject:** Fwd: FW: Notice of Further Exclusions -- POPA
**Date:** August 28, 2025 at 5:26 PM
**To:** Hirn law  richard@hirnlaw.com

Fyi

Patricia Duffy
President, POPA
pduffy@popa.org

--------- Forwarded message ---------
From: **Duffy, Patricia (AU1645)** <Patricia.Duffy@uspto.gov>
Date: Thu, Aug 28, 2025, 5:19 PM
Subject: FW: Notice of Further Exclusions -- POPA
To: Pat Duffy <pduffy@popa.org>, president@popa.org <president@popa.org>

After the fact notice.

---

**From:** Ahlstrom, Benjamin <Benjamin.Ahlstrom@USPTO.GOV>
**Sent:** Thursday, August 28, 2025 4:52 PM
**To:** Duffy, Patricia (AU1645) <Patricia.Duffy@USPTO.GOV>; Chu, Gabriel (AU2114) <Gabriel.Chu@USPTO.GOV>
**Cc:** Shewchuk, David <David.Shewchuk@USPTO.GOV>; Mendez, Anne <Anne.Mendez@uspto.gov>; Siehndel, Kathryn <Kathryn.Siehndel@USPTO.GOV>
**Subject:** Notice of Further Exclusions -- POPA

I have attached a notice for POPA.

Benjamin K. Ahlstrom

Acting Deputy Director

Office of Human Resources

Care | Collaboration | Expertise

U.S. Patent and Trademark Office

---

**From:** Coke Morgan Stewart, Acting Under Secretary of Commerce for IP, Acting USPTO Director <UnderSecretaryandDirector@subscriptions.uspto.gov>
**Sent:** Thursday, August 28, 2025 4:34 PM
**To:** Ahlstrom, Benjamin <Benjamin.Ahlstrom@USPTO.GOV>
**Subject:** Executive Orders pertaining to the USPTO



# Acting Director's Message



## Executive Orders pertaining to the USPTO

I am writing to share an update on an Executive Order that the President issued today, entitled "Further Exclusions from the Federal Labor-Management Relations Program," and on Executive Order 14251, entitled "Exclusions from Federal Labor-Management Relations Programs," issued on March 27, 2025.

The administration has determined that the Patents business unit and the Office of the Chief Information Officer (OCIO) business unit have "as a primary function … national security work," and that the federal labor statute cannot be applied to Patents and OCIO "in a manner consistent with national security requirements and consideration." As a result, employees in Patents and OCIO are no longer represented by unions (POPA and NTEU 243). These changes are effective immediately, and do not affect employees in other business units.

The executive orders do not affect any employee's duty station, salary, health and retirement benefits, work hours, award programs, or the like.

Best,

**Coke Morgan Stewart**

Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office

    



[PTOWeb](#) | [USPTO.gov](#)

This email was sent to benjamin.ahlstrom@uspto.gov using GovDelivery Communications Cloud on behalf of:
United States Patent and Trademark Office ·600 Dulany Street · Alexandria , VA 22314

**POPA Notice of Further Exclusions.pdf**
225 KB


# EXHIBIT

# I



# United States Patent and Trademark Office

*Office of the Chief Administrative Officer*

TO:        Patricia Duffy
           President, POPA

FROM:      Benjamin K. Ahlstrom
           Acting Deputy Director
           Office of Human Resources

DATE:      August 28, 2025

RE:        Executive Order dated August 28, 2025

As set forth in Executive Order, *Further Exclusions from the Federal Labor-Management Program*, issued on August 28, 2025, the President has determined that the United States Patent and Trademark Office (USPTO or the Agency), Office of the Commissioner for Patents (Patents) "has as a primary function intelligence, counterintelligence, investigative, or national security work" and therefore is no longer subject to the Federal Service Labor-Management Relations Statute, United States Code Title 5, Chapter 71 (the Statute).[1] This builds upon the President's prior determination in Executive Order, *Exclusions from Federal Labor-Management Relations Programs,* issued on March 27, 2025, that Office of the Chief Information Officer (OCIO) business units for "each Executive department listed in section 101 of Title 5, United States Code," which includes the Department of Commerce (DOC), as well as its subdivisions such as the USPTO, also "have as a primary function intelligence, counterintelligence, investigative, or national security work" and are no longer subject to the Statute.

The Agency will no longer recognize POPA as the exclusive representative for any employees in Patents and OCIO.

In alignment with the Office of Personnel Management (OPM) *Guidance on Executive Order Exclusions from Federal Labor-Management Programs (Exclusions)*, dated March 27, 2025, the Agency will terminate payroll deductions of union dues for employees in Patents and OCIO who are no longer in the bargaining unit as soon as practicable under 5 U.S.C. § 7115.

In addition, although the Agency recognizes that POPA may choose to have Patents and/or OCIO employees continue to serve as union representatives going forward, Patents and OCIO employees will no longer be entitled to "official time," described in 5 U.S.C. § 7131 to carry out their representational duties since they are no longer bargaining unit employees or covered by the CBA. As the Federal Labor Relations Authority (FLRA) has held, official time may only be given to employees who are members of the same bargaining unit as the employees they are

---

[1] The President exercises this authority under 5 U.S.C. § 7103(b)(1) of the Statute. In addition, the Agency notes that primary patent examiners, i.e., those individuals with full signatory authority to sign all types of office actions, are appropriately excluded from the bargaining unit as management officials under 5 U.S.C. § 7112(b)(1).

representing. *See e.g., Federal Aviation Administration, Anchorage, Alaska*, 61 FLRA 176 (2005); *Naval Weapons Station, Yorktown, VA*, 55 FLRA 112 (1999).

The Agency will discontinue its participation in grievance and arbitration procedures arising under the Statute involving disputes brought on behalf of employees in Patents and/or OCIO, including those matters currently pending before a grievance official and/or arbitrator. Should non-bargaining Patents and/or OCIO employees wish to request personal relief in a matter of concern or dissatisfaction regarding their employment, they may, instead, avail themselves of the Agency's Administrative Grievance Procedures as set forth in Agency Administrative Order (AAO) 202-18 or another existing procedure available to non-bargaining unit employees.

The Agency has already notified impacted employees. Please let me know if you have any questions.

By Email

cc:     Gabriel Chu, Vice President, POPA
        David Shewchuk, Deputy General Counsel
        Kathryn Siehndel, Senior Counsel
        Anne Mendez, Acting Chief Administrative Officer

# EXHIBIT
# J

**From:** **Ferris, Ashleigh** Ashleigh.Ferris@USPTO.GOV
**Subject:** RE: Appointment for case #250612-07057
**Date:** September 9, 2025 at 10:12 AM
**To:** Arbspilker Arbspilker@comcast.net, Richard Hirn Richard@hirnlaw.com
**Cc:** Williams, Jennifer A. (GLO) Jennifer.Williams@USPTO.GOV



Dear Arbitrator Spilker,

Thank you for having agreed to serve as arbitrator in the USPTO and POPA arbitration
tentatively scheduled for November 17 and 18, 2025. We very much appreciate your
cooperation thus far.

On August 28, 2025, the President issued an Executive Order, *Further Exclusions from the
Federal Labor-Management Program*, in which he determined that the USPTO, Office of
the Commissioner for Patents (Patents) is no longer subject to the Federal Service Labor-
Management Relations Statute, United States Code Title 5, Chapter 71 (the Statute),
effective immediately.

This particular arbitration involved patent examiners within Patents. Accordingly, the
Agency is discontinuing its participation in grievance and arbitration procedures arising
under the Statute involving disputes brought on behalf of employees in Patents, including
this pending matter.

The Agency is officially withdrawing its request for a hearing on November 17 and 18,
2025. The parties had not yet finalized an arbitration contract and it does not appear that
there are any outstanding fees to pay for your services at this time, but please let us know if
that is not the case.

Thank you again for your time and consideration in this matter.

**Ashleigh L. Ferris**
Associate Counsel
Office of General Law
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-4150
Tel: 571.270.0770
ashleigh.ferris@uspto.gov

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
This e-mail message was sent by an attorney, and is intended only for the named
recipient(s). It contains information that may be confidential in nature, privileged, attorney
work product, or otherwise exempt from disclosure under applicable law. Please do not
forward this message without permission. If you received this message in error, please
notify the sender of this e-mail, then delete it.

---

**From:** Arbspilker <Arbspilker@comcast.net>
**Sent:** Monday, August 18, 2025 6:43 PM
**To:** Ferris, Ashleigh <Ashleigh.Ferris@USPTO.GOV>; Richard Hirn <Richard@hirnlaw.com>
**Cc:** Williams, Jennifer A. (GLO) <Jennifer.Williams@USPTO.GOV>
**Subject:** RE: Appointment for case #250612-07057

# EXHIBIT K



*\*\*\*This message is being sent to all Patents employees.\*\*\**

**USPTO** UNITED STATES
PATENT AND TRADEMARK OFFICE ®

Valencia Martin Wallace
Acting Commissioner for Patents

## Announcing updates to the Examiner Performance Appraisal Plan (PAP)

October 2, 2025

Dear Colleagues,

As you know, one of our main priorities as an agency is to ensure that our goals are aligned with our workforce. Your hard work and professionalism make a difference every day, and it is important that our systems recognize and support your performance.

After thoughtful review and consideration, the Examiner Performance Appraisal Plans (PAPs) for both utility and design examiners have been updated for fiscal year 2026. These updates respond to our increased focus on performance and accountability as detailed in the Office of Personnel Management's (OPM) memorandum on Performance Management for Federal Employees. The updates are designed to:

1. Provide greater clarity in performance expectations to promote employee success;
2. Align appraisal standards more closely with agency strategic goals and values;
3. Recognize high-quality work and contributions in a consistent and transparent way; and,
4. Strengthen our commitment to excellence, high-quality and timely examination.

The updated Examiner PAPs became effective October 1, 2025, a summary of the key changes and the rationale behind them are as follows:

- Production & Docket Management: Performance at the fully successful level for both of these critical elements will be rated on meeting 100% of your expectancy goal. This update ensures performance standards meeting fully successful align with job expectations, while commendable and outstanding performance reflects exceeding job expectations.

- Position Factors: The Position Factors for GS-15 Utility Examiners have been updated to 1.45 to account for the expertise level of the Generalist Examiners, Senior Examiners, and Expert Examiners.

- Production Count Values: Applications made special under the Patent Prosecution Highway (PPH), will be assigned a count value of 1.50 counts total. These applications include claims that sufficiently correspond to allowable claims(s) in another application. This change is meant to align the count value to reflect the workload for these applications.

- Production interview attribute time: Interview attribute time will be revised to a limit of 1 hour per new application or RCE (utility)/CPA (design), when during prosecution, the examiner conducts an interview. When more than one interview is needed in an application supervisors will have the flexibility to approve additional time and ensure that the interviews are being used to advance prosecution.

- Quality: This element remains substantially unchanged. There will be an edit to remove the Utility Quality Major Activity (QMA) directed to the activity 'Evaluating sufficiency of reissue oath/declarations', because utility reissues are handled by the Central Reexamination Unit. As a result, there will now be 18 Utility QMAs. We are also updating the language of the QMAs in the utility and design PAPs to improve consistency throughout.

- Professionalism and Stakeholder Interaction: This element is being revised to clarify expectations for performance and to provide criteria for evaluation of performance.

- Performance summary: The individual weights of the performance elements in the updated utility and design PAPs will be Production at 40%, Quality at 40%, Docket Management at 10%, and Professionalism and Stakeholder Interaction at 10%. All the elements remain critical elements for employee performance. The updates reflect that patent examination production and quality are at the foundation of our Agency's mission.

Additionally, the following PAPs will be aligned with the updated utility examiner PAP with respect to the patent examining functions:

- GS-14 Patent Examining Professional Detail (OITP); and,
- GS-14 Search and Classification Examiner.

These updated PAPs are a step forward in making sure your performance is accurately acknowledged in your appraisal and that you have a clear understanding of expectations in order to succeed.

To help you better understand these updates, two information sessions will be offered, **today at Noon ET** and **next Tuesday, October 7 at Noon ET**. In the next few weeks, training for all supervisors and examiners will be made available to ensure everyone has the tools they need to understand and benefit from the changes.

For more information on the updated PAP, please visit our internal page.

On behalf of myself and our leadership team, thank you for your commitment and dedication to inventors and entrepreneurs across the country.

Information session webcast links:

> 10/2/25  12 p.m. – 1 p.m. ET
> FY26 Patent Examiner PAP changes
> STARTS: Oct 2, 2025 12:00 PM ENDS: Oct 2, 2025 1:00 PM
> WEBCAST LINK: https://rev-vbrick.uspto.gov/#/events/4d9270d8-ece1-4044-973f-9d2126841b95

> 10/7/25  12 p.m. – 1 p.m. ET
> FY26 Patent Examiner PAP changes
> STARTS: Oct 7, 2025 12:00 PM ENDS: Oct 7, 2025 1:00 PM
> WEBCAST LINK: https://rev-vbrick.uspto.gov/#/events/d9119edf-cb61-43a1-af6f-e05b986a6cfc



Regards,

Valencia Martin Wallace

# EXHIBIT

# L





## FW: Extension and Updates to Pendency Balance Award Pilot
1 message





**From:** Assistant Commissioners for Patents <AssistantCommissionersforPatents@uspto.gov>
**Sent:** Friday, September 26, 2025 2:03 PM
**To:** Assistant Commissioners for Patents <AssistantCommissionersforPatents@uspto.gov>
**Subject:** Extension and Updates to Pendency Balance Award Pilot

*This email is intended for all Patents employees.*

On April 24, 2024, the Pendency Balance Award (PBA) pilot was announced and it was anticipated that the pilot would end on September 30, 2025.

The PBA pilot has been extended through January 10, 2026. This program has demonstrated strong participation, consistent delivery of high-quality work product, and a meaningful contribution toward our shared goal of improving patent application pendency. In addition to the extension, certain aspects of the pilot have been modified effective October 1, 2025. We would like to take this opportunity to provide you with additional information on these modifications for your awareness.

**Key Updates Beginning in Quarter 1 of Fiscal Year  2026**

- Updated Docketing and Compensation Caps

  - Examiners: Examiners will be eligible to have PBA applications docketed until they have earned 60 PBA work credit hours during a particular quarter allowing participants the flexibility to work up to the maximum bonus level if desired. However, examiners will only be paid up to a maximum of 60 PBA work credit hours per quarter, so as to not exceed the statutory annual pay cap. In an effort to avoid uncompensated work, examiners should exercise caution and manage their dockets to avoid eclipsing 60 hours in a particular quarter.

  - Non-examiner (e.g., SPE, MQAS participants): Non-examiner participants will be eligible to have PBA applications docketed until they have earned 80 PBA work credit hours during a particular quarter allowing participants the flexibility to work up to the maximum bonus level if desired. Non-examiners will be paid up to a maximum of 80 PBA work credit hours per quarter, so as to not exceed the statutory annual pay cap. In an effort to avoid uncompensated work, non-examiners should exercise caution and

manage their dockets to avoid eclipsing 80 hours in a particular quarter.

These modified caps reflect existing distinctions across award structures and maintain equity in total compensation opportunities.

Patents management will continue to evaluate the pilot and consider adjustments that best align with the goals of both internal and external stakeholders. Updates will be provided as refinements are made to ensure the program continues to fairly recognize and compensate the contributions of participants.

For additional details, including FAQs, please visit the PBA microsite or contact your Technology Center PBA point of contact.

Thank you,

The Assistant Commissioners for Patents