IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL WEATHER SERVICE EMPLOYEES ORGANIZATION**, et al., | : : : |
| Plaintiffs, | : : |
| v. | :     Case No. 1:25-cv-02947-PLF |
| **DONALD J. TRUMP**, et al., | : : : |
| Defendants. | : |

## DECLARATION OF ROBERT STOLL

I, Robert Stoll, declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I have a Bachelor of Science degree in Chemical Engineering from the University of Maryland and a Juris Doctor degree from Catholic University. I worked for the U.S. Patent and Trademark Office from 1982 until 2012.

2. I served as the Commissioner of Patents from October 2009 until January 2012. As Patents Commissioner, I managed and lead the Patents organization within the USPTO as its chief operating officer. I oversaw the agency's Patents employees, including nearly 8,000 patent examiners who were responsible for fostering the country's innovation system by providing patent protections to inventors as stated in Article I, Section 8 of the U.S. Constitution. I oversaw the examination of approximately 500,000 patent applications annually. As

Commissioner of Patents, I had ultimate responsibility for executing the USPTO's responsibilities under the Invention Secrecy Act of 1951, 35 U.S.C. § 181.

3. Prior to serving as Commissioner of Patents, I served in numerous other leadership positions at the USPTO, including Executive Assistant to the Assistant Secretary of Commerce and Commissioner of Patents and Trademarks; Administrator of the Office of Legislative and International Affairs; Director of the Office of Enforcement; and Dean of Training and Education for the USPTO.

4. One of the management positions in which I served was the Supervisory Patent Examiner in the Office of Licensing and Review which discharges the USPTO's responsibilities under the Invention Secrecy Act of 1951.

5. The Invention Secrecy Act provides that whenever the publication or disclosure of an invention by the publication of a patent application or by the granting of a patent, might be detrimental to the national security, the patent application should be referred to the Atomic Energy Commission, the Secretary of Defense, and other defense agencies such as the Departments of Energy and Homeland Security and NASA. If, in their opinion the disclosure of the invention by the publication of the application or by granting a patent for it would be detrimental to the national security, the defense agency notifies the Commissioner of Patents who then issues a secrecy order and withholds the publication of the application or the granting of a patent for such period as the national interest requires.

6. The Office of Licensing and Review conducts a first step, automated review of incoming patent applications to identify which applications should

undergo additional screening to determine whether they should be forwarded to the defense agencies for their assessment under the Invention Secrecy Act. This second level screening is conducted by a group of about *just two dozen patent examiners* of the many thousands of patent examiners who work under the Office of the Commissioner of Patents. Ultimately, the defense agencies request that the Commissioner of Patents issue a secrecy order for and forgo publication of only a small number of patent applications annually.

7. I have read the so-called "Fact Sheet" that was issued by the White House simultaneously with Executive Order 14323. That "Fact Sheet" states that "[t]he Invention Secrecy Act tasks the PTO with reviewing inventions made in the United States, assessing whether their release could harm national security, and if so, issuing secrecy orders that prevent public disclosure." *This is not correct.* The Invention Secrecy Act tasks the defense agencies, and not the PTO, with "assessing whether their release could harm national security." And although the Commissioner of Patents formally issues the secrecy orders, it is the defense agencies that make the determination whether the Commissioner should issue such a secrecy order.

8. I understand that the Federal Service Labor Management Relations Statute, 5 U.S.C. § 7103(b), authorizes the President to exempt an agency or subdivision from the coverage of the labor statute if he determines that:

(A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and

(B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations.

9. "Intelligence, counterintelligence, investigative, or national security work" is **not** "a primary function" of the Office of the Commissioner of Patents. Administration of its responsibilities under the Invention Secrecy Act involves only a few dozen of the 10,000 or so employees who work in that Office and is a minor part of its responsibilities.

10. Moreover, the provisions of the Federal Service Labor Management Relations Statute have been applied in and by the Office of the Commissioner of Patents "in a manner consistent with national security requirements and considerations" for nearly half a century. While I was employed by the USPTO, none of the procedural requirements in Federal labor-management relations, including the USPTO's collective bargaining agreement with the Patent Office Professional Association, created any delays that impacted the ability of the Commissioner of Patents or the Office of Licensing and Review to carry out its responsibilities under the Invention Secrecy Act, and I cannot imagine a situation or scenario under which that could occur.

*Robert L. Stoll*

ROBERT STOLL

Executed on October 7th, 2025 in Alexandria, Virginia.